1

2

3

4

5

6

7

8                  IN THE UNITED STATES DISTRICT COURT

9                FOR THE EASTERN DISTRICT OF CALIFORNIA

10   THAE LEE,

11              Petitioner,                No. 2: 11-cv-2855 MCE KJN P

12        vs.

13   CONNIE GIPSON,

14              Respondent.        FINDINGS AND RECOMMENDATIONS

15   _____/

16   I.  Introduction

17              Petitioner is a state prisoner, proceeding without counsel, with a petition for writ

18   of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 2008 conviction for

19   discharging a firearm at an occupied vehicle (Cal. Penal Code § 246), with special findings that

20   he personally used a firearm (Cal. Penal Code § 12022.53(c), and committed the crime to

21   promote a criminal street gang (Cal. Penal Code § 186.22(b)(1)).  Petitioner is serving a sentence

22   of twenty-five years to life.  In particular, petitioner was sentenced to five years for discharging a

23   firearm at a vehicle plus twenty years for personally using a firearm, with the indeterminate term

24   added by the gang enhancement.

25              This action is proceeding on the original petition filed October 28, 2011.  (Dkt.

26   No. 1.)  Petitioner raises the following claims: 1) the California Court of Appeal improperly

1   considered facts outside the record in deciding petitioner's appeal; 2) insufficient evidence to

2   support the gang enhancement; 3) violation of Confrontation Clause; 4) improper admission of

3   prejudicial evidence; 5) the trial court erred in denying petitioner's motion to dismiss; 6) jury

4   instruction error; 7) ineffective assistance of trial and appellate counsel; and 8) the gang

5   enhancement statute is unconstitutionally vague.

6          After carefully reviewing the record, the undersigned recommends that the

7   petition be denied.

8   II.  Standards for a Writ of Habeas Corpus

9          An application for a writ of habeas corpus by a person in custody under a

10  judgment of a state court can be granted only for violations of the Constitution or laws of the

11  United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the

12  interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991);

13  Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

14         Federal habeas corpus relief is not available for any claim decided on the merits in

15  state court proceedings unless the state court's adjudication of the claim:

16             (1) resulted in a decision that was contrary to, or involved an
               unreasonable application of, clearly established Federal law, as
17             determined by the Supreme Court of the United States; or

18             (2) resulted in a decision that was based on an unreasonable
               determination of the facts in light of the evidence presented in the
19             State court proceeding.

20  28 U.S.C. § 2254(d).

21         Under section 2254(d)(1), a state court decision is "contrary to" clearly

22  established United States Supreme Court precedents if it applies a rule that contradicts the

23  governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially

24  indistinguishable from a decision of the  Supreme Court and nevertheless arrives at different

25  result.  Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-06

26  (2000)).

1        Under the "unreasonable application" clause of section 2254(d)(1), a federal

2   habeas court may grant the writ if the state court identifies the correct governing legal principle

3   from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the

4   prisoner's case.  Williams, 529 U.S. at 413.  A federal habeas court "may not issue the writ

5   simply because that court concludes in its independent judgment that the relevant state-court

6   decision applied clearly established federal law erroneously or incorrectly.  Rather, that

7   application must also be unreasonable." Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 75

8   (2003) (it is "not enough that a federal habeas court, in its independent review of the legal

9   question, is left with a 'firm conviction' that the state court was 'erroneous.'") (internal citations

10  omitted).  "A state court's determination that a claim lacks merit precludes federal habeas relief

11  so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."

12  Harrington v. Richter, 131 S. Ct. 770, 786 (2011).

13       The court looks to the last reasoned state court decision as the basis for the state

14  court judgment.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).  If there is no reasoned

15  decision, "and the state court has denied relief, it may be presumed that the state court

16  adjudicated the claim on the merits in the absence of any indication or state-law procedural

17  principles to the contrary."  Harrington, 131 S. Ct. at 784-85.  That presumption may be

18  overcome by a showing that "there is reason to think some other explanation for the state court's

19  decision is more likely."  Id. at 785 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).

20       Where the state court reaches a decision on the merits but provides no reasoning

21  to support its conclusion, the federal court conducts an independent review of the record.

22  "Independent review of the record is not de novo review of the constitutional issue, but rather,

23  the only method by which we can determine whether a silent state court decision is objectively

24  unreasonable."  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  Where no reasoned

25  decision is available, the habeas petitioner has the burden of "showing there was no reasonable

26  basis for the state court to deny relief."  Harrington, 131 S. Ct. at 784.  "[A] habeas court must

1 determine what arguments or theories supported or, . . . could have supported, the state court's

2 decision; and then it must ask whether it is possible fairminded jurists could disagree that those

3 arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. at

4 786.

5 III.  Factual Background

6                    The opinion of the California Court of Appeal contains a factual summary.  After

7 independently reviewing the record, the undersigned finds this summary to be accurate and

8 adopts it herein.

9                    FACTUAL BACKGROUND

10                   The shooting

11                   On January 13, 2007 (all further unspecified calendar dates are to that year),
      15-year-old Kelly V. [FN4] arranged to meet her friend J.L., who was 14, in front
12                   of a Fairfield Street apartment complex in North Sacramento. Kelly's 23-year-old
      nephew, See Vue, lived in the complex. Kelly and See were emotionally close and
13                   she often spent the night at his apartment.

14                          FN4. For convenience and to avoid confusion, we will customarily refer to
      the witnesses by their first names.
15

16                   Kelly set up the meeting by calling Jerry Vang, a member of the Hmong gang
      known as "Masters of Destruction," which goes by the acronym MOD. When
      Vang received the call, he was at a park with J.L. and J.L.'s sister Sophia.
17                   Following the call, Jerry drove the two sisters and Bobby Yang to meet Kelly.

18                   The group arrived at the apartment complex and waited for Kelly to enter the car.
      Instead of joining them, however, Kelly just stood about 10 to 20 feet away,
19                   texting or calling from her cell phone.

20                   After about five minutes, a silver Honda-type car pulled up alongside and a
      hooded Asian male, who was sitting on the passenger side, fired several rounds
21                   into Jerry's vehicle.

22                   Bobby was hit in the finger and Jerry was grazed in the waist by stray bullets, but
      J.L. was hit in the thigh. Jerry drove them to the hospital where J.L. was treated
23                   for a gunshot wound.

24                   Police investigation

25                   On February 13, a month after the shooting, Kelly was interviewed at the police
      station. She described the assailants as two young Asian males in a gray Honda
26                   Accord, but initially denied knowing the identity of the shooter. After the police

4

interviewer urged her several times to tell the truth, Kelly wrote defendant's name down on a piece of paper. She also selected defendant's picture from a photographic lineup. Kelly reluctantly admitted that she set up J.L. to be shot because she was jealous and angry over J.L.'s relationship with Jerry. Kelly instructed defendant to shoot at the car, not at the people, because she only wanted to "scare" J.L. Kelly gave a detailed description of crystal methamphetamine use and dealing at the Fairfield Street apartment where See Vue, Seng Vue and John Vang were staying. She stated that she offered defendant an "eight ball" of crystal methamphetamine to be provided by her nephew See, in return for doing the shooting.

Following Kelly's interview, officers conducted a raid on the Fairfield Street apartment. The officers found a partial methamphetamine laboratory, and seized a large amount of methamphetamine and a cache of illegal firearms. As a result of the raid, Hmong Nation Society (HNS) gang members John Vang and Seng Vue were charged with possession of methamphetamine for sale and John Vang was also charged with possession of illegal firearms.

On February 15, Detective Joseph Bailey of the gang suppression unit of the Sacramento Police Department interviewed the victim J.L. Although she was very fearful, J.L. identified defendant as the shooter from a six-pack photographic lineup.

Trial testimony

Kelly

Kelly was called as a witness for the prosecution. At the time of trial, she was serving time in a treatment facility in Wyoming after pleading guilty to assault in connection with the shooting.

At the commencement of her testimony, Kelly readily admitted that she set up the shooting, but displayed a remarkable lack of memory about the statements she had made to the police implicating defendant as the shooter. After the video of her police interview was played for the jury, her memory improved. She admitted setting up J.L. to be shot by defendant because J.L. was saying bad things about her behind her back and always trying to embarrass her. She instructed defendant to shoot at the car, not at the people, because she just wanted to frighten J.L.

Kelly testified that See, Seng and John Vang were selling methamphetamine from their apartment and furnishing it to her. See and defendant were affiliated with the HNS gang and hung out together. She knew Jerry to be a member of the MOD gang. See and his HNS friends did not like Jerry because he was a MOD, and gave Kelly a hard time because she associated with him.

Kelly was fearful of retaliation against her family by HNS if she testified against defendant, and conceded that it would be better for her family if she did not identify defendant. She admitted telling her counselor and an investigator that she planned on lying at the trial.

////

J.L.

J.L. testified that she used to be a close friend of Kelly's. J.L. and Jerry were also close friends. Although defendant is J.L.'s cousin, she does not know him well.

On the day of the shooting, J.L. was hanging out at Natomas Park with her sister Sophia, and Jerry and Bobby Yang. Kelly called Jerry and told him to pick her up, so the three of them got in Jerry's car and drove to the Fairfield Street apartment complex.

When they arrived, Kelly was about 20 feet from their car, standing there, doing nothing. Finally, a silver car with two Asian males pulled up alongside and the passenger fired three or four shots into Jerry's car. J.L. was shot in the leg.

When confronted with her pretrial identification of defendant as the shooter, J.L. tried to retract it. She claimed she was "confused" and selected defendant's photo only because she thought the officer was asking her if she recognized anyone in the lineup.

After the shooting, J.L. ran into defendant at a funeral. He told her "I heard that you got shot, so how's your leg doing?" Defendant then lifted up his shirtsleeve and displayed his "HNS" gang tattoo, which scared her and gave her a "weird feeling." J.L. admitted telling the detective who interviewed her that she was fearful of testifying in the case. She acknowledged that defendant's associates still reside in the neighborhood where she lives.

Gang evidence

Detective John Fan, who is assigned to the gang suppression unit of the Sacramento Police Department, testified that Jerry Vang was an associate of the MOD gang, a Hmong gang that predominates in the south area of Sacramento.

Detective Bailey, a specialist in Asian gangs, also testified. Bailey explained that HNS is a Hmong gang that claims the north side of town for its territory, whereas, MOD predominates on the south side. Asian street gangs are "ruthless, ... violent criminals," who thrive on intimidation. Citizens, as well as other gang members, know that "if you mess with an Asian gang member, they're gonna have a gun."

HNS gang members have been involved in drive-by shootings, as well as the manufacture, sale and use of methamphetamine. They have also been known for intimidating witnesses, crime victims and their families. Detective Bailey testified about the case of Ger Lor, an HNS gang member. Lor was convicted of the drive-by shooting of Johnny Her, a member of a rival gang. The shooting in July 2005 benefitted HNS by enhancing its reputation in the community and with rival gang members. [FN5]

FN5. The trial court took judicial notice of court documents relating to Ger Lor's conviction for attempted murder and shooting at an occupied motor vehicle, which included true findings on gang enhancements for each crime.

Detective Bailey testified defendant was a validated member of the HNS gang.

6

Defendant admitted his gang membership and had gang graffiti throughout his room. The apartment complex where the shooting occurred was an HNS "gang hangout," where methamphetamine was being manufactured, gang members were harboring arms, and drug traffic was flowing.

Answering a hypothetical based upon the evidence in this case, Detective Bailey testified that, in his opinion, such a shooting promoted or benefitted the HNS gang. By shooting a rival gang member in front of their own hangout, HNS enhanced its reputation, engendered fear in the community and hesitancy in rival gangs about disrespecting them. Bailey discounted the possibility that the shooting could have been motivated by the promise of a single dose of crystal methamphetamine. He stated the risk was too great, "unless it is to benefit the gang."

Detective Bailey interviewed J.L. and her family. They were all "very afraid" that if they cooperated with the police they would suffer retaliation by the HNS gang.

Defense

Defendant did not testify. Several of his family members testified that he was at a family barbeque on the day of the shooting, that he stayed all day long, and did not leave until the barbeque ended late that evening.

Defendant also presented two witnesses who intimated that See Vue, who was in poor health and had died by the time of trial, might have been responsible for the shooting because the victim, Jerry, was Kelly's boyfriend and she complained to See that Jerry had beaten her up.

(Dkt. No. 15-1 at 3-9.)

IV. Discussion

    A. Claim 2: Insufficient Evidence

    The undersigned addresses claim two first because it puts claim one in context.

    The California Court of Appeal was the last state court to issue a reasoned decision addressing this claim. (Dkt. No. 15-1, Respondent's Lodged Document 8.) Accordingly, the undersigned considers whether the denial of this claim by the California Court of Appeal was an unreasonable application of clearly established Supreme Court authority.

    *Legal Standard*

    When a challenge is brought alleging insufficient evidence, federal habeas corpus relief is available if it is found that upon the record evidence adduced at trial, viewed in the light most favorable to the prosecution, no rational trier of fact could have found "the essential

1  elements of the crime" proven beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307,

2  319 (1979).  Jackson established a two-step inquiry for considering a challenge to a conviction

3  based on sufficiency of the evidence.  U.S. v. Nevils, 598 F.3d 1158, 1164 (9th Cir. 2010) (en

4  banc).  First, the court considers the evidence at trial in the light most favorable to the

5  prosecution.  Id., citing Jackson, 443 U.S. at 319.  "'[W]hen faced with a record of historical

6  facts that supports conflicting inferences," a reviewing court 'must presume—even if it does not

7  affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of

8  the prosecution, and must defer to that resolution.'"  Id., quoting Jackson, 443 U.S. at 326.

9        "Second, after viewing the evidence in the light most favorable to the prosecution,

10  a reviewing court must determine whether this evidence, so viewed is adequate to allow 'any

11  rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt.'"

12  Id., quoting Jackson, 443 U.S. at 319.  "At this second step, we must reverse the verdict if the

13  evidence of innocence, or lack of evidence of guilt, is such that all rational fact finders would

14  have to conclude that the evidence of guilt fails to establish every element of the crime beyond a

15  reasonable doubt."  Id.

16        Superimposed on these already stringent insufficiency standards is the

17  requirement of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") that even if a

18  federal court were to initially find on its own that no reasonable jury should have arrived at its

19  conclusion, the federal court must also determine that the state appellate court not have affirmed

20  the verdict under the Jackson standard in the absence of an unreasonable determination.  Juan H.

21  v. Allen, 408 F.3d 1262 (9th Cir. 2005).

22        *Analysis–Claim One*

23        Petitioner argues that there was insufficient evidence to support his gang

24  enhancement.  On direct appeal, the California Court of Appeal denied this claim for the reasons

25  stated herein:

26  ////

II. Gang Enhancement

Defendant claims the gang enhancement should be stricken. These arguments may be broken into two components: one based on an incorrect "legal theory" presented to the jury and the other based on insufficiency of the evidence. Neither has merit.

A. Incorrect Theory

Pursuant to section 186.22, subdivision (b)(1), the jury found that defendant's crime of shooting at an occupied vehicle (§ 246) was committed "for the benefit of, or at the direction of, or in association with a criminal street gang, to wit 'HNS', with the specific intent to promote, further and assist in criminal conduct by gang members."

The definition of a "criminal street gang" includes the requirement that its members "individually or collectively engage in or have engaged in a pattern of criminal gang activity." (§ 186.22, subd. (f).) A "pattern of criminal gang activity" is defined as gang members' individual or collective "commission of, attempted commission of, conspiracy to commit, or solicitation of, sustained juvenile petition for, or conviction of two or more" enumerated "predicate offenses" during a statutorily defined time period. (§ 186.22, subd. (e); People v. Gardeley (1996) 14 Cal.4th 605, 617 (Gardeley).)  The predicate offenses must have been committed on separate occasions, or by two or more persons. (§ 186.22, subd. (e); People v. Loeun (1997) 17 Cal.4th 1, 9-10.) The charged crime may serve as one of the predicate offenses. ( Gardeley, supra, at p. 625; People v. Duran (2002) 97 Cal.App.4th 1448, 1457 (Duran).)

To prove a second predicate offense (other than the crime for which defendant was on trial), Detective Bailey testified about a drive-by shooting by Ger Lor, a member of HNS, of Johnny Her, a rival gang member. Bailey also recounted the drug raid on an HNS "hangout," at Fairfield Street apartments, where two gang members were arrested for possession for sale of methamphetamine and possession of illegal firearms.

In closing argument, the prosecutor told the jury that they could find a second predicate offense based on either the Ger Lor shooting in 2005 or the fact that two HNS members were "having guns and selling dope" in 2007.

Defendant claims that the jury could consider only the Ger Lor shooting, which predated the charged crime, not the drug and firearm arrests that took place afterwards. The Attorney General concedes the prosecutor should not have urged the jury to consider the February 2007 arrests, but claims that because the Ger Lor drive-by shooting easily qualified as a second predicate crime, the error was harmless.

Defendant finds prejudicial error based on People v. Green (1980) 27 Cal.3d 1, 69 (Green) (overruled on other grounds in People v. Martinez (1999) 20 Cal.4th 225, 233-237 and People v. Hall (1986) 41 Cal.3d 826, 834, fn. 3) and People v. Guiton (1993) 4 Cal.4th 1116, 1122 (Guiton), which hold that when the prosecution presents its case to the jury on alternate theories, some of which are

9

legally correct and others legally incorrect, and the reviewing court cannot determine from the record on which theory the ensuing general verdict of guilt rested, the conviction cannot stand. However, Green and Guiton are not relevant here, because they involved instructional error.  Defendant does not claim the instructions were erroneous. The invalid factual theory he cites appears in the prosecutor's closing remarks. That claim is forfeited, because he never objected to the prosecutor's argument in the trial court. (People v. Morales (2001) 25 Cal.4th 34, 43-44 .)

Furthermore, for the reasons that follow, we find the jury could consider Detective Bailey's testimony about the drug raid on See Vue's apartment in deciding whether a second predicate crime had been committed by the HNS gang.

Section 186.22 includes, as a predicate "offense" to show a pattern of gang activity, the "sale, possession for sale, transportation, manufacture, offer for sale, or offer to manufacture controlled substances." (§ 186.22, subd. (e)(4).) It is true that a crime that takes place after the charged crime may not be considered as a predicate offense for purposes of satisfying the "pattern of criminal gang activity" requirement of section 186.22. (Duran, supra, 97 Cal.App.4th at pp. 1463-1464.) However, nothing in the statute mandates that the arrest or conviction predate the charged offense. Section 186.22 merely requires "evidence of a gang's past *criminal conduct*," which must be "'ascertainable to a reasonable degree of certainty and involve [ ] felonious conduct undertaken with a specific, criminal intent.'"  (People v. Godinez (1993) 17 Cal.App.4th 1363, 1368-1369, italics added.)

Here, Kelly testified that See Vue had been dealing methamphetamine from his apartment and providing it to her. Officers conducting a raid of the apartment just one month after the shooting found four illegal firearms, more than 10 baggies, close to 80 grams of methamphetamine, and the remnants of a methamphetamine lab. Two HNS gang members were arrested and eventually convicted of possession for sale of methamphetamine. Based on this evidence, a reasonable jury could find that the HNS gang had engaged in felonious conduct, i.e., manufacture and sale of methamphetamine prior to the shooting. The fact that the arrests and convictions took place afterward did not preclude the jury from concluding that the criminal activities occurred during the relevant time frame.

B. Substantial Evidence

Defendant also claims the Ger Lor shooting could not be used as a predicate crime and thus the entire gang enhancement should be stricken, because there was no competent evidence that Ger Lor was a member of HNS. Defendant bases this argument on the assertion that Detective Bailey never gave an opinion that Lor was an HNS member, but relied on Lor's validation by another officer. Since hearsay evidence may be relied upon by expert witnesses, but may not be used as "independent proof" of any fact (Gardeley, supra, 14 Cal.4th at p. 619), defendant contends there was a lacuna in proof that the drive-by shooting, of which Lor was convicted, was committed by a gang member.

In addition to Detective Bailey's description of the facts surrounding the shooting, the prosecution introduced court records of Ger Lor's conviction, including true

findings on gang enhancements. Such official records are competent evidence to prove predicate crimes. (Evid.Code, § 452.5; Duran, supra, 97 Cal.App.4th at pp. 1459-1462.) But defendant has not designated those exhibits as part of the appellate record. We must presume that evidence not before us would support the challenged finding. (Cf. Estate of Fain (1999) 75 Cal.App.4th 973, 992.) Thus, the incomplete record on appeal effectively prevents us from assessing the sufficiency of the evidence, and results in a forfeiture of defendant's substantial evidence argument. (People v. Malabag (1997) 51 Cal.App.4th 1419, 1427.)

In any event, defendant's argument is based on a false premise. Detective Bailey did give an opinion that Lor was a gang member, as evidenced by the following colloquy:

"[PROSECUTOR]: Now, are you familiar with the facts of [the Ger Lor drive-by shooting]?

"[DET. BAILEY]: Yes, I am.

"[PROSECUTOR]: How did you become familiar with the facts of the Ger Lor case?

"[DET. BAILEY]: I read the case.

"[PROSECUTOR]: Now, what gang was Ger Lor in, if any?

"[DET. BAILEY]: Hmong Nation Society." (Italics added.)

Bailey then added that Lor's membership was validated by another member of the gang task force or a cop.FN6

> FN6. We summarily reject defendant's claim that Detective Bailey's recitation of another officer's validation of Lor as a gang member violated his confrontation clause rights under Crawford v. Washington (2004) 541 U.S. 36, 67-68.  At least two California cases have debunked this argument. ( People v. Ramirez  (2007) 153 Cal.App.4th 1422, 1427; People v. Thomas (2005) 130 Cal.App.4th 1202, 1210.)

Gang membership is the proper subject of expert opinion testimony. (People v. Killebrew (2002) 103 Cal.App.4th 644, 656-657.) The italicized quote amounted to an expert opinion by Detective Bailey on Lor's gang membership, based on both a reading of the case file and Lor's validation by a colleague. The mere fact that Bailey did not preface his statement by saying, "It is my opinion that ..." did not mean it was not admissible opinion testimony. Bailey's opinion testimony, coupled with proof of Ger Lor's gang-related conviction, constituted substantial evidence to support the jury's finding that the drive-by shooting was committed by an HNS gang member. (See Duran, supra, 97 Cal.App.4th at p. 1463.)

(Dkt. No. 15-1 at 16-21.)

////

1   Petitioner is arguing that evidence regarding the methamphetamine sales was not

2   sufficient evidence of a predicate act because the methamphetamine offenses occurred after his

3   crime.  For the reasons stated by the California Court of Appeal, this claim is without merit.  The

4   incident on which petitioner's conviction is based occurred on January 13, 2007.  In a February

5   13, 2007 interview with Detective Beezley that was played to the jury, Kelly Vue discussed the

6   methamphetamine activity in the HNS hang out.  Kelly Vue stated that she had seen crystal

7   methamphetamine at the apartment two or three months earlier.  (Court Transcript ("CT") at

8   381.)  Kelly Vue stated that she witnessed methamphetamine being sold at the apartment.  (Id. at

9   384-86.)  Kelly Vue testified that she stopped going to the apartment two or three times a week

10  "ever since Christmas."  (Id. at 388.)  After Christmas, she went a few times.  (Id. at 399.)

11  Prosecution gang expert John Van testified that on February 13, 2007, he arrested

12  Seng Vue and John Vang at the apartment discussed by Kelly Vue in her interview with

13  Detective Beezley.  (RT at 376.)  Expert Van testified that after searching the apartment, four

14  illegal firearms were found and close to 80 grams of methamphetamine.  (Id. at 379.)  Expert Van

15  testified that the apartment contained a "partial meth lab.  It appeared that there were – they were

16  actually cooking meth inside the apartment."  (Id.)

17  As stated by the California Court of Appeal, California law does not require that

18  the predicate act involve an arrest or conviction predating the charged offense.  Rather, California

19  Penal Section 186.22 requires evidence of a gang's past criminal conduct.  In the instant case,

20  based on the testimony of expert Van and Kelly Vue, a reasonable jury could find that the

21  methamphetamine sales and manufacturing occurred prior to January 13, 2007, i.e., the date of

22  petitioner's offense.  For this reason, petitioner's claim alleging that there was not sufficient

23  evidence on which to find a predicate crime based on the methamphetamine sales and

24  manufacturing is without merit.

25  ////

26  ////

12

1    The undersigned next considers petitioner's argument that the Ger Lor shooting

2    could not be used as a predicate crime because there was no competent evidence that Ger Lor

3    was a member of HNS.  As discussed above, the prosecution presented evidence of Ger Lor's

4    gang membership by way of Detective Bailey's testimony and criminal records showing Ger

5    Lor's prior convictions for gang enhancements, of which the trial court took judicial notice.  The

6    California Court of Appeal found that petitioner waived this claim by failing to present the

7    judicially noticed records on appeal.  The California Court of Appeal went on to find that

8    Detective Bailey's testimony, alone, was sufficient evidence of Ger Lor's gang membership.

9    In the instant case, respondent does not argue that the instant claim is procedurally

10   barred based on petitioner's failure to present a complete record on appeal.   Accordingly, the

11   undersigned considers the merits of this claim.  Bennett v. Mueller, 322 F.3d 573, 585-86 (9th

12   Cir. 2003) (procedural default is an affirmative defense).

13   Petitioner argues that there was insufficient evidence that Ger Lor was an HNS

14   member because Detective Bailey did not give his own opinion that Ger Lor was an HNS

15   member, but instead testified that another officer found that Ger Lor was a gang member.

16   "In California, experts may testify as to their opinions on relevant matters, and, if

17   questioned, may relate the information and sources on which they relied in forming those

18   opinions."  People v. Thomas, 130 Cal.App.4th 1202, 1209 (2005).  Such sources may include

19   hearsay.  (Id.)  "Hearsay relied upon by experts in formulating their opinions ... is not offered for

20   the truth of the facts stated but merely as the basis for the expert's opinion. [Citations.]"  People

21   v. Cooper, 148 Cal.App.4th 731, 747 (2007).

22   The undersigned sets forth, in full, Detective Bailey's at-issue testimony:

23   Q: What was Ger Lor initially charged with?

24   A: Ger Lor was charged with attempt homicide.

25   Q: Now, are you familiar with the facts of that case?

26   A: Yes, I am.

1    Q: How did you become familiar with the facts of the Ger Lor case?

2    A: I read the case.

3    Q: Now, what gang was Ger Lor in, if any?

4    A: Hmong Nation Society.

5    Q: And how do you know he was in the Hmong Nation Society?

6    A: He was validated by either another gang investigator or a cop.  So basically the
     same validation criteria were met with that validation.

7

8    (RT at 425-26.)

9            By asking Detective Bailey how he knew that Ger Lor was in the HNS, the

10   prosecutor essentially asked for the basis of his opinion that Ger Lor was in the gang.  While

11   Detective Bailey did not explicitly state that his opinion was based on a validation made by

12   another officer, it was clearly implied.   For this reason, petitioner's argument that Detective

13   Bailey's testimony was not sufficient evidence of Ger Lor's HNS membership is without merit.

14           The undersigned also observes that petitioner has presented no evidence that the

15   judicially noticed records were not adequate evidence of Ger Lor's HNS membership.  As noted

16   in the California Court of Appeal's opinion, the trial court took judicial notice of records

17   showing Ger Lor's convictions for gang enhancements:

18           Prosecutor: Correct.  The People request that the Court take judicial notice that in
             case 05F06512, on March 22nd, 2006, department 37 of Sacramento courthouse,
19           Ger Lor, by jury verdict was found guilty of attempted murder, also found true
             was that he was guilty of a 12022.53(d), and was also found guilty of gang
20           enhancement 186.22(b).  Additionally, to Count Two on that day he was found
             guilty of 246 of the Penal Code, also the allegations 12022.53(b)(c) and
21           additionally gang enhancement under 186.22(b) was also found to be true on the
             date of March 22nd, 2006.
22
             Court:  This is one of the court's own files brought up from records.  The Court
23           has reviewed this.  If you need to look back on it it is in the transcript.

24           I am taking judicial notice of the fact that what Mr. Washington just shared with
             you is a true and accurate record of this court in the Ger Lor matter referred to in
25           case ending 6512.

26           ****

14

1            You, the jury, will decide whether HNS is a criminal street gang, that's part of the
2 People's burden of proof in this case.  And that's why you're hearing about these other files in other cases.  That will be clear to you when I read the instructions.

3 (RT at 532-33.)

4         Petitioner's failure to argue and present evidence demonstrating that these

5 judicially noticed records did not demonstrate Ger Lor's HNS membership is also grounds on

6 which to deny the instant claim. In other words, petitioner has not met his burden of

7 demonstrating that the records were not adequate.

8         The denial of this claim by the California Court of Appeal was not an

9 unreasonable application of clearly established Supreme Court authority.  Accordingly, this claim

10 should be denied.

11         *Analysis – Claim Raised in State Habeas Petition*

12         In his state habeas petitions, petitioner also argued that there was insufficient

13 evidence to support the gang enhancement because there was insufficient evidence that he

14 intended the shooting to benefit the gang, as required by California Penal Code § 186.22.  In the

15 petitions filed in the Superior Court and California Supreme Court, petitioner argued,

16         INADEQUATE EVIDENCE EXISTS TO SHOW
        "SPECIFIC INTENT" ELEMENT PURSUANT
17          TO PENAL CODE 186.22

18         The facts in this case prove that actual, direct evidence showing why the shooting
19 was done was cast aside and replaced with pure speculation.  Both at the preliminary hearing and at trial the gang expert testified to the real evidence showing that the shooting was done because of a romantic rivalry.  See Fact # 2,
20 Page 7, Fact 3 10, Page 9 of this petition.  But that truth inconveniently stood in the way of the life sentence the prosecutor sought.  So improper speculation was
21 elicited from the gang expert in an attempt to satisfy the element of "specific intent," which is a required mental state....

22

23 (Respondent's Lodged Documents 10, 15 and 17 at 17 (Petitions filed in Superior Court,
24 California Court of Appeal and California Supreme Court.)

25         While the Superior Court issued a reasoned decision, it did not address this claim.

26 (Respondent's Lodged Document 12.)  In the state petitions, petitioner raised this claim within

15

his discussion of his claim alleging that the records of Ger Lor, John Vang and Seng Vue were insufficient to support the gang enhancement.  In other words, the state habeas petitions did not raise the instant claim as a separate claim but instead as a sub-claim of the claim challenging the records of Ger Lor, etc.   For that reason, it appears that the Superior Court may have missed this claim or disregarded it.  Respondent may argue that this claim is not exhausted based on these circumstances.   However, because this claim is without merit, it may be addressed regardless of exhaustion.  28 U.S.C. § 2254(b)(2) (an application for writ of habeas corpus may be denied on the merits notwithstanding the failure to exhaust available state court remedies).

To establish a gang enhancement, the prosecution must prove two elements: (1) that the crime was "committed for the benefit of, at the direction of, or in association with any criminal street gang," and (2) that the defendant had "the specific intent to promote, further, or assist in any criminal conduct by gang members ...."  Cal. Penal Code § 186.22, (b)(1).)  "Not every crime committed by gang members is related to a gang."  People v. Albillar, 51 Cal.4th 47, 60 (2005).

The specific intent element of § 186.22(b)(1) does not "require[ ] that the defendant act with the specific intent to promote, further, or assist a gang ; the statute requires only the specific intent to promote, further, or assist criminal conduct by gang members."  Albillar, supra, 51 Cal.4th at p. 67.  This element "applies to any criminal conduct, without a further requirement that the conduct be 'apart from' the criminal conduct underlying the offense of conviction sought to be enhanced."  Id. at p. 66.

Evidence that a crime would enhance a gang's status or reputation or that it would intimidate rival gangs or potential witnesses within the gang's territory, has been found to be sufficient to support a finding that the crime was "for the benefit of" the gang.  See, e.g., People v. Garcia, 153 Cal.App.4th 1499, 1503–06, 1511–12 (2007).

Petitioner argues that there was insufficient evidence that he intended for the crime to benefit the HNS gang because the overwhelming evidence demonstrated that the

shooting was committed because of a romantic rivalry.

In response to a hypothetical question describing the circumstances of the shooting, Officer Bailey testified that the shooting benefitted the HNS gang in two ways.  First, the shooting benefitted the HNS gang because it was committed in front of an HNS hangout. (RT at 438.)  For that reason, the shooting would send a message to the community that the gang is more notorious and more dangerous and people should not mess with it.  (Id.)  In addition, because the shooting occurred in front of an HNS drug house, rival gang members would be more hesitant to rip off the HNS for their drugs.  (Id. at 439.)  Officer Bailey went on to suggest that shooting a rival gang member in front of the HNS hangout also enhanced the HNS reputation. (Id.)

On re-direct, Officer Bailey testified that his opinion that the shooting was gang motivated would not change even if petitioner was offered drugs or money for the shooting:

> Q: There was also a few questions about a hypothetical.  My question to you is this.  In the hypothetical I put to you, we had the situation where the shooter was a gang member and they had been paid or been promised drugs in exchange for the shooting as part of the reason.
> Introducing that same hypothetical but now let's just take out the fact of anyone's receiving any payment that the shooting happens without anyone asking it to happen.  Let's take out that issue.  Would you still have the opinion that the shooting was done for the benefit of the gang?
>
> A: Yes.
>
> Q: Why?
>
> A: It is the nature of the crime itself.  What reasonable member of society opens fire on a car with no real objective or – I mean it is almost like – it is such a heinous crime, how else do you explain it?  Okay, there is a little bit of money involved or you have taken the money out, so now other than the benefit of a gang member to build his reputation as a notorious gangster or to build the reputation of the gang itself as being a notorious, ruthless, dangerous gang, I can't think of any other reasons benefitting the gang that someone would do that.
>
> Q: So now – having that be your opinion, now we reintroduce the money portion of it.  Does that change your opinion you just said, the fact that money is now introduced that makes those things now no longer more true than they would have been before?
> A.  No.  Because $40, $200, the risk is too great.  For $180 or some crystal or 40 bucks, whatever the payment is, as a reasonable person or who I think of as a

1    reasonable person myself, how can that justify the means?  How can $40 or $100
2    or $200 be worth that risk unless it is to benefit the gang.  There is no personal
    motivation besides being a gangster or reiterating that gangster life that I can think
3    of as a motive for shooting into a car.

4 (RT at 470-71.)

5        The evidence demonstrated that Kelly Vue was motivated by a romantic rivalry

6 when she hired petitioner to commit the shooting.  She also testified that she intended to pay

7 petitioner with money and drugs.  However, Detective Bailey's testimony makes clear that

8 petitioner himself was not motivated by romantic rivalry or a desire to obtain drugs or money

9 when he committed the shooting.  Instead, Detective Bailey convincingly testified that

10 petitioner's intent in committing the shooting was to benefit the gang's reputation and drug sales.

11 In making this finding, the undersigned makes the following observations.

12        While Detective Bailey testified that petitioner shot a rival gang member to

13 enhance the gang reputation, there was no evidence that petitioner knew that a rival gang member

14 would be with the Lee girls until the moment of the shooting.  For this reason, it is difficult to say

15 that petitioner intended to benefit the HNS by shooting at rival gang members.  In other words,

16 the shooting of the rival gang member may have been opportunistic.[1]

17        However, Detective Bailey also testified that petitioner intended to benefit the

18 gang by committing the shooting in front of the HNS drug house and hangout.  Detective Bailey

19 testified that a shooting in front of the drug house would benefit the HNS drug business and

20 enhance the gang reputation.  While Kelly Vue set up the location of the shooting, petitioner

21 knew where it was to occur and agreed to commit the shooting at the location.  Detective Bailey

22

23      [1] Conversely, the jury may have drawn the reasonable inference that petitioner knew rival
gang members would be involved because Kelly testified that "See and his HNS friends did not
like Jerry because he was a MOD, and gave Kelly a hard time because she associated with him."
24 (See Dkt. No. 15-1 at 3-9.)  And, petitioner apparently knew he was going to be shooting into a
car ("Kelly instructed defendant to shoot at the car, not at the people..."), yet J.L. was only 14 and
25 Kelly's call to set up J.L. was made by calling Jerry Vang from MOD.  Thus, the jury could have
reasonably inferred that petitioner was motivated by shooting at a car likely occupied by a rival
26 gang member.  (Id.)

1  testified, in effect, that there was no other reason that petitioner would have agreed to commit the

2  shooting at this location other than to promote the gang.

3          While there was other evidence suggesting that petitioner may have been

4  motivated by drugs or money, and possibly to assist Kelly Vue in her desire to punish her friends

5  based on romantic rivalry, the jury was also presented with strong evidence that the shooting was

6  done with the intent to benefit the gang.  When there is conflicting evidence as to the motive for

7  a defendant's crime, the jury is entitled to credit that the crime was gang related.  People v.

8  Albillar, 51 Cal.4th 47, 62 (2010).  For this reason, the jury was entitled to rely on Detective

9  Bailey's testimony that petitioner intended the shooting to benefit the gang in finding petitioner

10  guilty of the gang enhancement.  Accordingly, this claim should be denied.

11          B.  Claim One:  Consideration of Evidence Outside the Record

12          In a separate claim, petitioner argues that the California Court of Appeal erred

13  when it considered the judicially noticed records of Ger Lor's prior convictions for a gang

14  enhancement in denying petitioner's insufficient evidence claim.  Petitioner also appears to

15  challenge judicially noticed records regarding the prior convictions of John Vang and Seng Vue.

16  (See RT at 532.)  The trial court told the jury that the Vang and Vue records concerned the

17  prosecution's contention that HNS is a criminal street gang whose members had committed

18  certain crimes.  (Id. at 532-33.)

19          Petitioner appears to argue that the judicially noticed records do not establish the

20  facts for which they were judicially noticed.  As noted above, the California Court of Appeal

21  found that petitioner waived his sufficiency of evidence claim because he, petitioner, did not

22  present the records regarding Ger Lor.

23          Petitioner has not presented the at-issue records in support of the instant petition,

24  as is his burden.  These records are easily obtained because they are court records and the case

25  numbers are set forth in petitioner's trial transcript.  Because this claim is unsupported, it should

26  be rejected.  See Greenway v. Schriro, 653 F.3d 790, 804 (9th Cir. 2011) (A "cursory and vague

1 claim cannot support habeas relief.")  Accordingly, this claim should be denied.

2                 C.  Claim Three:  Confrontation Clause

3              In claim three, petitioner argues that Detective Bailey's testimony regarding

4 whether Ger Lor was a gang member violated the Confrontation Clause.  In particular, petitioner

5 argues that his lawyer did not have the opportunity to cross-examine the officer on whose work

6 Detective Bailey based his opinion that Ger Lor was an HNS gang member.

7              As indicated above, the California Court of Appeal rejected this claim on the

8 merits.

9              The Confrontation Clause of the Sixth Amendment specifically provides that "[i]n

10 all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses

11 against him."  U.S. Const., amend VI.  The United States Supreme Court has held that the

12 Confrontation Clause bars the state from introducing out-of-court statements which are

13 testimonial in nature, unless "the declarant is unavailable, and only where the defendant has had

14 a prior opportunity to cross-examine."  Crawford v. Washington, 541 U.S. 36, 59 (2004).

15              The Confrontation Clause does not, however, bar the use of testimonial statements

16 for purposes other than establishing the truth of the matter asserted.  Crawford, 541 U.S. at 59

17 n.9.  "Thus, Crawford does not undermine the established rule that experts can testify to their

18 opinions on relevant matters and, may relate the information and sources upon which they rely in

19 forming those opinions."  Lopez v. Horel, 2011 WL 940054, at *11 (C.D.Cal. Jan. 19, 2011)

20 (citing Ortiz v. Tilton, 2008 WL 2543440, at *14, 16 (S.D.Cal. May 5, 2008), report and

21 recommendation adopted by, 2009 WL 1796537 (S.D.Cal. Jun.23, 2009)).

22          Numerous courts have held since Crawford that "the introduction of otherwise
         inadmissible evidence in support of a gang expert witness' testimony does not

23          violate the Confrontation Clause."  Id.; see also Lopez v. Jacquez, Civ. No.
         09–1451, 2010 WL 2650695, at *6 (E.D.Cal. July 1, 2010) ("[T]he Court does not

24          find that an objective application of Crawford would result in a finding that the
         gang expert's reliance on hearsay testimony to explain his opinion that Petitioner

25          was a member of the West Fresno Nortenos, and that the West Fresno Nortenos
         are a criminal street gang, to be in violation of Petitioner's Confrontation Clause

26          rights), report and recommendation adopted by, 2010 WL 3384691 (E.D.Cal.

1    Aug.26, 2010); Walker v. Clark, Civ. No. 08–5587, 2010 WL 1643580, at *15 n.8
     (C.D.Cal. Feb.18, 2010) ( "Cason v. Hedgpeth, Civ. No. 08–4576, 2009 WL
2    1096209, at *13–14 (C.D.Cal. Apr. 22, 2009) (hearsay evidence regarding
     witness's gang membership did not violate Crawford because it was admitted not
3    for the truth of the matter asserted but to support detective's opinion that witness
     was a gang member); Thomas v. Chromes, Civ. No. 06–787, 2008 WL 4597214,
4    at *7 (C.D.Cal. Oct. 10, 2008) (gang expert's reliance on gang members'
     statements as basis for opinion that petitioner was a gang member did not violate
5    Crawford); Ortiz, 2008 WL 2543440, at * 16 (gang expert's reliance on field
     investigation reports, defendants' admissions as to gang member status, and other
6    hearsay as basis for opinion did not violate Crawford because materials were not
     admitted for truth of the matter asserted and his reliance on them was subject to
7    cross-examination); Nguyen v. Evans, Civ. No. 06–4630, 2008 WL 1994902, at
     *5 (N.D.Cal. May 5, 2008) (gang expert's testimony regarding information he
8    received from other gang members and victims, which he used as a basis for his
     opinion, did not violate Crawford); Eddington v. Adams, Civ. No. 06–1770, 2008
9    WL 397290, at *10 (E.D.Cal. Feb. 8, 2008) (gang expert's reliance on gang
     member's statement as part of basis for opinion did not violate Crawford).").
10   report and recommendation adopted by, 2010 WL 1641372 (C.D.Cal.Ap.20,
     2010)

11

12   Her v. Jacquez, 2011 WL 1466868 at * 33 (E.D. Cal. 2011).

13         For the reasons stated in the cases cited above, the undersigned finds that

14   Detective Beasley's testimony regarding Ger Lor's gang membership did not violate petitioner's

15   Confrontation Clause rights.

16         The denial of this claim by the California Court of Appeal was not an

17   unreasonable application of clearly established Supreme Court authority.  Accordingly, this claim

18   should be denied.

19         D.  Claims Four, Five and Six

20         In claim four, petitioner alleges that the trial court adopted an erroneous rule of

21   law resulting in the admission of incompetent, unreliable and prejudicial gang evidence in

22   violation of his constitutional rights.  In claim five, petitioner alleges that the trial court erred in

23   denying his motion to dismiss made pursuant to California Penal Code § 1118.1.  In claim six,

24   petitioner alleges that the removal of "specific intent" from the jury instructions violated his right

25   to due process.

26   ////

                                    21

1       Petitioner raised claims four, five and six in a habeas petition filed in the

2   Sacramento County Superior Court.  (Respondent's Lodged Document 12.)  The Superior Court

3   rejected these claims on grounds that they should have been raised on appeal, citing In re Dixon,

4   41 Cal.2d 756, 759 (1953), and In re Harris, 5 Cal.4th 813, 828 (1993).  (Id.)  Petitioner raised

5   these claims in habeas corpus petitions filed in the California Court of Appeal and California

6   Supreme Court which were denied without comment or citation.  (Respondent's Lodged

7   Documents Nos. 15-18.)

8       Respondent argues that claims four, five and six are procedurally barred.  When a

9   state procedural bar is applied by a state trial court and relief is summarily denied by the state's

10  higher courts, a federal court looks to the last reasoned state court decision as the basis for the

11  state court judgment. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) ("Where, as here, the last

12  reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a

13  later decision rejecting the claim did not silently disregard that bar and consider the merits.").

14  Accordingly, the undersigned looks through the California Supreme Court's and California Court

15  of Appeals' summary denials of petitioner's habeas petitions to the order by the Superior Court

16  finding the instant claim procedurally barred.

17      As a general rule, "[a] federal habeas court will not review a claim rejected by a

18  state court 'if the decision of [the state] court rests on a state law ground that is independent of

19  the federal question and adequate to support the judgment." Walker v. Martin, 131 S. Ct. 1120,

20  1127 (2011) (quoting Beard v. Kindler, 130 S. Ct. 612, 615 (2009).)   Procedural default can only

21  block a claim from federal habeas review if the state court, "clearly and expressly states that its

22  judgment rests on a state procedural bar."  Harris, 489 U.S. at 263.  This limitation means that

23  the state court must have specifically stated that it was denying relief on a procedural ground.

24  See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991); Acosta–Huerta v. Estelle, 7 F.3d 139, 142

25  (9th Cir. 1993).

26  ////

1    In order for a state procedural rule to be found independent, the state law basis for

2    the decision must not be interwoven with federal law.  Cooper v. Neven, 641 F.3d 322, 332 (9th

3    Cir. 2011); Bennett v. Mueller, 322 F.3d 573, 581 (9th Cir. 2003).  To be deemed adequate, the

4    rule must be well established and consistently applied.  Walker, 131 S. Ct. at 1128; Ford v.

5    Georgia, 498 U.S. 411, 424 (1991) (a state rule for these purposes is only "adequate" if it is

6    "firmly established and regularly followed").  Even if the state rule is independent and adequate,

7    the claims may be reviewed by the federal court if the petitioner can show: (1) cause for the

8    default and actual prejudice as a result of the alleged violation of federal law; or (2) that failure to

9    consider the claims will result in a fundamental miscarriage of justice.  Edwards v. Carpenter,

10   529 U.S. 446, 451 (2000).

11   It has been determined by the Ninth Circuit that prior to 1998 the Dixon rule, i.e.,

12   that habeas cannot substitute for an appeal, was not independent of federal law.  See Park v.

13   California, 202 F.3d 1146, 1152–53 (9th Cir. 2000).  In Park, the Ninth Circuit reasoned that

14   application of the Dixon rule necessarily was interwoven with federal law because there was a

15   fundamental constitutional error exception to the Dixon rule under state law.  Id. at 1152–53.

16   However, in In re Robbins, 18 Cal.4th 770 (1998), the California Supreme Court held "that

17   henceforth California courts would no longer determine whether an error alleged in a state

18   petition constituted a federal constitutional violation."  Bennett, 322 F.3d at 581.  In Bennett, the

19   Ninth Circuit stated, "we respect the California Supreme Court's sovereign right to interpret its

20   state constitution independent of federal law" and, as a result, found that California's

21   untimeliness rule was an independent state ground.  Id. at 581–83.

22   Thus, under these particular circumstances, it appears that the Superior Court's

23   invocation of Dixon in November of 2010 in the instant case, after Robbins was decided, could

24   serve as an independent state ground.  Id. at 582–83; see also Park, 202 F.3d at 1153 n.4.  In this

25   regard, "there [is no] existing Ninth Circuit precedent holding that the Dixon rule is inadequate."

26   Cree v. Sisto, 2011 WL 66253, at *2 (E.D. Cal. Jan 7, 2011) (Kozinski, J., sitting by

designation).  See also Cantrell v. Evans, 2010 WL 1170063, at *13–14 (E.D.Cal. Mar. 24, 2010)

(McKeown, J., sitting by designation) ("[T]he procedural bar established by In re Dixon .... is an

adequate and independent state law reason for refusing to reach the merits ....")

Because the state court's reliance on Dixon in denying claims four, five and six is

an  independent and adequate state ground, these claims are procedurally defaulted unless

petitioner can show cause for the default and actual prejudice as a result of the alleged violation

of federal law or that failure to consider the claims will result in a fundamental miscarriage of

justice.  See Coleman, 501 U.S. at 750.

As will be discussed herein, petitioner also raised claims four, five and six in the

context of ineffective assistance of trial and appellate counsel claims in a habeas corpus petition

filed in the Sacramento County Superior Court.  The Superior Court rejected these related

ineffective assistance of trial and appellate counsel claims on the merits.  For the reasons

discussed below in the section addressing petitioner's ineffective assistance of trial and appellate

counsel claims, the undersigned finds that petitioner has demonstrated neither prejudice nor a

fundamental miscarriage of justice if claims four, five and six are not addressed on the merits.

Accordingly, claims four, five and six should be denied as procedurally barred.

E.  Claim Seven

In claim seven, petitioner alleges ineffective assistance of trial and appellate

counsel.

*Legal Standard*

The test for demonstrating ineffective assistance of counsel is set forth in

Strickland v. Washington, 466 U.S. 668 (1984).  The same test applies in claims alleging

ineffective assistance of appellate counsel.  Smith v. Robbins, 528 U.S. 259, 287 (2000).

First, a petitioner must show that, considering all the circumstances, counsel's

performance fell below an objective standard of reasonableness.  Id. at 688.  To this end, the

petitioner must identify the acts or omissions that are alleged not to have been the result of

reasonable professional judgment.  Id. at 690.  The federal court must then determine whether in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance.  Id.  "We strongly presume that counsel's conduct was within the wide range of reasonable assistance, and that he exercised acceptable professional judgment in all significant decisions made."  Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689).

Second, a petitioner must affirmatively prove prejudice.  Strickland, 466 U.S. at 693.  Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.

In extraordinary cases, ineffective assistance of counsel claims are evaluated based on a fundamental fairness standard.  Williams v. Taylor , 529 U.S. 362, 391-93 (2000), (citing Lockhart v. Fretwell, 506 U.S. 364 (1993)).

The Supreme Court has emphasized the importance of giving deference to trial counsel's decisions, especially in the AEDPA context:

> In Strickland we said that "[j]udicial scrutiny of a counsel's performance must be highly deferential" and that "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." 466 U.S. at 689.  Thus, even when a court is presented with an ineffective-assistance claim not subject to § 2254(d)(1) deference, a [petitioner] must overcome the "presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  Ibid. (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

> For [petitioner] to succeed, however, he must do more than show that he would have satisfied Strickland's test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland

////

////

25

incorrectly.  See Williams, supra, at 411.[2]  Rather, he must show that the [ ]Court of Appeals applied Strickland to the facts of his case in an objectively unreasonable manner.

Bell v. Cone, 535 U.S. 685, 698-99 (2002).

*State Court Opinion*

Petitioner raised his ineffective assistance of trial and appellate counsel claims in a habeas corpus petition filed in the Sacramento County Superior Court.  The Superior Court denied these claims in a reasoned opinion.  (Respondent's Lodged Document 12.)  The California Court of Appeal and California Supreme Court summarily denied habeas corpus petitions raising these claims.  (Respondent's Lodged Documents 15-18.)  Accordingly, the undersigned considers whether the Superior Court's denial of these claims was a reasonable application of clearly established Supreme Court authority.

The Superior Court denied these claims for the reasons stated herein:

IV.  Ineffective Assistance of Counsel

A petitioner seeking relief by way of habeas corpus has the burden of stating a prima facie case.  (In re Bower (1985) 38 Cal.3d 865, 872.)  A petition for writ of habeas corpus should attach as exhibits all reasonably available documentary evidence or affidavits supporting the claim.  (People v. Duvall (1995) 9 Cal.4th 464, 474.)  To show constitutionality inadequate assistance of counsel, a defendant must show that counsel's representation fell below an objective standard and that counsel's failure was prejudicial to the defendant.  (In re Alvernaz (1992) 2 Cal.4th 924, 937.)  It is not a court's duty to second-guess trial counsel and great deference is given to trial counsel's tactical decisions.  (In re Avena (1996) 12 Cal.4th 694, 722.)  Actual prejudice must be shown, meaning that there is a reasonable probability that, but for the attorney's error(s), the result would have been different.  (Strickland v. Washington (1984) 466 U.S. 668, 694.)  If no prejudice is established, it is unnecessary to determine whether counsel's performance was deficient.  (In re Fields (1990) 51 Cal.3d 1063, 1079.)

A.  Trial Counsel

1.  Motion under Penal Code Section 995

An information will be set aside only if there is no rational ground for assuming the possibility that an offense was committed and the defendant guilty thereof.  (Rideout v. Superior Court (1967) 67 Cal.2d 471, 474.)  The elements of the Penal

---

[2]  This internal citation should be corrected to Williams v. Kaiser, 323 U.S. 471, 477 (1945).

Code section 188.22 allegation are that the crime was committed for the benefit of or in association with a criminal street gang, and the crime was committed with the specific intent to promote, further, or assist in criminal conduct by gang members. (CALCRIM No. 1401.) A criminal street gang is an ongoing group of three or more persons, having one or more of its primary activities the commission of certain crimes, having a common name or sign or symbol, and whose members have engaged in a patter of criminal activity. (Pen. Code, § 186.22(f).) Intent may and often must be shown by circumstantial evidence. (CALCRIM No. 225; People v. Falck (1997) 52 Cal.App.4th 287, 299.) When a defendant fails to object to the admissibility of evidence at a preliminary hearing, the magistrate may consider the evidence as part of the probable cause to bind the defendant over for trial. (People v. Rosales (1984) 153 Cal.App.3d 353, 364.)

Petitioner claims that trial counsel should have filed a motion to dismiss the information on the grounds that there was no showing that Hmong Nation Society ("HNS") was a gang and there was no showing that Petitioner committed the crime with the specific intent to benefit the gang. Petitioner has not attached any evidence to support his claim. Even so, review of the transcript of the preliminary hearing demonstrates that a motion to dismiss the information would have been futile. Sacramento Police Gang Investigator Joseph Bailey testified that HNS was one of the Asian gangs in Sacramento. (May 22, 2007 Preliminary Hearing Transcript at p. 76.) There are approximately 35 known members of HNS in Northern Sacramento. (Id. at p. 77.) HNS appeared to fit the legal definition of criminal street gang because they had been involved in at least three crimes over the previous years. (Id. at 78.) Petitioner does not identify any deficiency in the evidence. Instead, he makes reference (at p. 55 of the petition) to a "fact" relating to gang enhancements in a predicate offense. At most, this suggests that there was insufficient evidence that HNS members had engaged in a pattern of criminal activity. However, Bailey testified at the preliminary hearing about the 2005 case involving another gang member. Since there was some evidence that HNS was a criminal street gang, Petitioner has not shown that counsel's failure to file a motion to dismiss on this basis was not unreasonable.

Petitioner also claims that there was no showing that he had the specific intent to commit the crime for the benefit of the gang. Detective Bailey testified that in his opinion, the crime was committed for the benefit of HNS. (Id. at p. 85.) Petitioner argues that the finding that he committed the crime for the specific intent of promoting the gang was speculative in light of the alternative motive that he committed the crime for payment and that the true motive for the crime was romantic jealousy.

However, at a preliminary hearing, the standard of proof is extremely low. Moreover, evidence of intent must often be shown by circumstantial evidence. Given petitioner's gang membership, that the occupants of the victim's vehicle were rival gang members, the location of the crime, and other evidence at the preliminary hearing, there was sufficient evidence to support the holding order. Therefore, Petitioner's claim is without merit.

////

2. Writ of Prohibition

Petitioner claims that following the holding order on the gang allegation, trial counsel should have filed a petition for writ of prohibition to preclude the continued prosecution.  As stated above, there was insufficient legal justification for challenging the holding order.  Therefore, counsel's omission was neither unreasonable, nor prejudicial to the outcome of petitioner's case.

3.  Motion to Exclude Gang Evidence

Petitioner argues that trial counsel should have moved to exclude gang evidence on the grounds that it was more probative than prejudicial under Evidence Code section 352.  However, gang evidence was absolutely probative since Petitioner was charged with a gang enhancement.  The case cited by Petitioner is of no application here.

4.  Objection to Judicial Notice

Judicial notice "is an evidentiary doctrine that permits the court to consider as established in a case a matter of law or fact that is relevant to an issue, without the necessity of formal proof of the matter by any party.  Judicial notice is a substitute for formal proof.  Judicial notice may be taken of ... a proposition of fact.  The fundamental theory of judicial notice is that the matter that is judicially noticed is one of law or fact that cannot reasonably be disputed."  (Post v. Prati (1979) 90 Cal.App.3d 626, 633; citations omitted.)

Finally, Petitioner contends that trial counsel should have objected to the prosecutor's recital of "hearsay" facts relating to the convictions of other gang members.  Similarly, Petitioner claims that counsel did not object to the trial court "testifying" regarding those convictions, which established the predicate offenses for the gang enhancement.  Petitioner fundamentally misunderstands the rules of evidence.  On January 4, 2008, the Court took judicial notice of the Court's records in case number 05F06512 (Ger Lor) and 07F01772 (John Vang and Seng Vue).  Since judicial notice is a substitute for formal proof, all of the court's records regarding those two cases were properly evidence in Petitioner's case.  Counsel's objection to either the Court's action or the prosecutor's reference to the evidence would have been overruled.

B.  Appellate Counsel

Appellate Counsel performs "properly and competently when he or she exercises discretion and presents only the strongest claims instead of every conceivable claim."  (Robbins, supra, 18 Cal.4th at 810.)

1.  Gang Evidence at Preliminary Hearing

Petitioner claims that the magistrate at the preliminary hearing improperly admitted gang evidence and that Petitioner was wrongfully held to answer on the gang enhancement even though the evidence pointed to a non-gang related motive.  As discussed above, Petitioner's claim that there was insufficient evidence of his specific intent to promote the gang is without merit.  Petitioner

also claims that the holding order was based on speculation that the predicate offense (a drive by shooting committed by Ger Lor) was committed for a gang purpose. However, it is not required that the predicate offense be committed for the benefit of the gang. (See People v. Gardeley (1996) 14 Cal.4th 605, 622.) Therefore, the failure to raise these issues on appeal was not prejudicial.

2. Motion to Dismiss Under Penal Code Section 1118.1

Petitioner's motion to dismiss was denied. Petitioner now claims that appellate counsel should have argued on appeal that the motion should have been granted. Petitioner again relies on the fact that there was insufficient evidence to support the gang enhancement. As discussed above, the Court of Appeal determined that there was sufficient evidence of the enhancement. Consequently, raising the issue of the motion to dismiss would have been futile.

3. Jury Instructions

Petitioner argues that the jury instructions were confusing because the instruction that stated that the prosecutor did not have to prove motive effectively lessened the burden of proof required for the gang enhancement. The court gave CALCRIM No. 370, which states that the prosecutor does not have to prove motive, as well as CALCRIM No. 252, which states that the mental state required for the gang enhancement is specific intent or mental state. The instruction on motive does not conflict with the instructions for intent. (See People v. Snead (1993) 20 Cal.App.4th 1088, 1098, overruled on other grounds, People v. Letner and Tobin (2010) 50 Cal.4th 99.) Consequently, appellate counsel's failure to raise this issue on appeal was not ineffective.

4. Appellate Advocacy

Petitioner complains that appellate counsel did not sufficiently support the claims on appeal with facts and law. However, nothing in this petition identifies any facts or law that would have been persuasive on appeal. Petitioner has failed to show that he is entitled to relief.

5. Ineffective Assistance of Trial Counsel

Lastly, Petitioner claims that appellate counsel should have argued on appeal that trial counsel was ineffective. As discussed above, Petitioner has not shown that trial counsel was ineffective. Therefore, raising the claim on appeal would not likely have made a difference in the outcome of Petitioner's appeal.

(Respondent's Lodged Document 12 at 3-7.)

*Ineffective Assistance of Trial Counsel*

The Superior Court properly denied petitioner's claim alleging that trial counsel was ineffective for failing to file a motion to dismiss the information following the preliminary hearing on grounds that there was insufficient evidence that the HNS was a gang as defined by

29

1   the statute.  After reviewing the preliminary hearing transcript, the Superior Court rejected

2   petitioner's arguments that there was no evidence that the HNS was a gang.  The Superior Court

3   cited Detective Bailey's testimony that the HNS is one of the Asian gangs in Sacramento.  (CT at

4   93.)  Detective Bailey testified that HNS fit the legal definition of a criminal street gang because

5   they had been involved in more than three crimes in the last two years.  (Id. at 95.)  Detective

6   Bailey also testified at the preliminary hearing about the Ger Lor case, discussed above.  (Id. at

7   96-97.)

8            Based on Detective Bailey's testimony, the Superior Court reasonably found that

9   petitioner's trial counsel was not unreasonable for failing to file a motion to dismiss on grounds

10  that there was no evidence that HNS was a gang.  A motion to dismiss based on insufficient

11  evidence had no merit.

12           Petitioner next argues that his trial counsel was ineffective for failing to move to

13  dismiss the gang enhancement following the preliminary hearing on grounds that there was not

14  sufficient evidence that he acted with the specific intent to benefit the gang.

15           As discussed above, to establish a gang enhancement, the prosecution must prove

16  two elements: (1) that the crime was "committed for the benefit of, at the direction of, or in

17  association with any criminal street gang," and (2) that the defendant had "the specific intent to

18  promote, further, or assist in any criminal conduct by gang members ...."  Cal. Penal Code §

19  186.22, (b)(1).)

20           The specific intent element of § 186.22(b)(1) does not "require[ ] that the

21  defendant act with the specific intent to promote, further, or assist a gang; the statute requires

22  only the specific intent to promote, further, or assist criminal conduct by gang members."

23  Albillar, supra, 51 Cal.4th at p. 67.  This element "applies to any criminal conduct, without a

24  further requirement that the conduct be 'apart from' the criminal conduct underlying the offense

25  of conviction sought to be enhanced."  Id. at p. 66.

26  ////

1       Evidence that a crime would enhance a gang's status or reputation or that it would

2  intimidate rival gangs or potential witnesses within the gang's territory has been found to be

3  sufficient to support a finding that the crime was "for the benefit of" the gang.  See, e.g., People

4  v. Garcia, 153 Cal.App.4th 1499, 1503–06, 1511–12. (2007).

5       In rejecting this claim, the Superior Court cited Detective Bailey's preliminary

6  hearing testimony that the shooting was done to benefit the HNS gang.  In particular, Detective

7  Bailey testified that in his opinion the shooting was done to benefit the gang because one of the

8  victims, Bobby Vang, was from the south area, and his brother was a member of a rival gang.

9  (CT at 102.)  The shooting occurred in HNS territory in front of a drug operation run by the HNS.

10  (Id.)  The shooting was a message to rival gang members from the south that if they come there,

11  they will get shot.  (Id.)  Detective Bailey also testified that a shooting for hire is something that

12  could benefit the HNS gang reputation.  (Id.)  He further testified that the fact that an HNS gang

13  member participates in any type of shooting enhances the overall reputation of the gang because

14  it lets rival gang members know they have guns and are not afraid to use them.  (Id. at 115.)

15       Based on Detective Bailey's testimony, there was rational ground for assuming

16  that petitioner intended to benefit the gang when he shot at the car.  Rideout v. Superior Court,

17  67 Cal.2d 471, 474 (1967) (an information will not be set aside if there is some rational ground

18  for assuming the possibility an offense was committed and the accused is guilty of it).  For this

19  reason, a motion to dismiss the information after the preliminary hearing on grounds that there

20  was insufficient evidence that petitioner intended to benefit the gang would have been futile.

21  The denial of this claim by the Superior Court was not an unreasonable application of clearly

22  established Supreme Court authority.

23       Petitioner next argues that his counsel was ineffective for failing to file a writ of

24  mandate following the preliminary hearing on grounds that the gang evidence was more

25  prejudicial than probative.  In denying this claim, the Superior Court found that counsel was not

26  ineffective for failing to file a writ of mandate on these grounds because gang evidence was

"absolutely probative" because petitioner was charged with a gang enhancement.  The

undersigned agrees with this reasoning.  Accordingly, the denial of this claim by the Superior

Court was not an unreasonable application of clearly established Supreme Court authority.

Petitioner next argues that trial counsel was ineffective for failing to object to the

judicial notice taken by the trial court of the criminal convictions of Ger Lor, John Vang and

Seng Vue.  The Superior Court found that the trial court followed state law when taking judicial

notice of these records.  For this reason, the Superior Court found that any objection by trial

counsel to the trial court's judicial notice of these records would have been futile.  The

undersigned agrees with this reasoning by the Superior Court.  Accordingly, the denial of the this

ineffective assistance of trial counsel claim by the Superior Court was not an unreasonable

application of clearly established Supreme Court authority.

*Ineffective Assistance of Appellate Counsel*

At the outset, the undersigned observes that petitioner's trial counsel represented

petitioner on appeal.

Petitioner argues that his appellate counsel was ineffective for failing to argue that

there was insufficient evidence to support the holding order regarding the gang enhancement

following the preliminary hearing on two grounds.  First, petitioner argues that there was

insufficient evidence of his specific intent to promote the gang.  Second, petitioner argues that

there was insufficient evidence that the Ger Lor shooting, one of the predicate offenses, was for a

gang purpose.

As discussed above, the Superior Court found that there was sufficient evidence

presented at the preliminary hearing that petitioner committed the crime with the specific intent

to benefit the HNS.  The Superior Court also rejected petitioner's argument that there was

insufficient evidence that the predicate offense involving Ger Lor was committed for a gang

purpose.  The Superior Court correctly stated that, under California law, there is no need to

establish that the predicate offense was committed for the benefit of, at the direction of or in

association with a gang.  People v. Gardeley, 14 Cal.4th 605, 621-22 (1996).   The Superior

Court implicitly found these claims would have been denied if raised on appeal.  The

undersigned agrees that appellate counsel was not ineffective for failing to raise these claims on

appeal as they would have been denied.  Accordingly, the denial of this claim of ineffective

assistance of appellate counsel was not an unreasonable application of clearly established

Supreme Court authority.

Petitioner next argues that appellate counsel was ineffective for failing to argue

that the trial court improperly denied trial counsel's motion to dismiss made pursuant to

California Penal Code § 1181.1.  This section provides that, at the close of evidence, the court on

motion of the defendant or on its own motion, shall order the entry of a judgment of acquittal of

the accusatory pleading if the evidence is insufficient to sustain a conviction.  Cal. Penal Code §

1181.1.

In his petition filed in the Superior Court, petitioner argued that the trial court

should have granted the motion for acquittal pursuant to California Penal Code § 1181.1 on

grounds that there was insufficient evidence to support the gang enhancement on the same

grounds as raised on direct appeal.  (Respondent's Lodged Document 10 at p. 47-49.)  Petitioner

also argued that appellate counsel was ineffective for failing to raise this issue on appeal.  (Id. at

53-54.)  The Superior Court denied this claim on grounds that the California Court of Appeal had

already determined that there was sufficient evidence of the gang enhancement.

In neither the petition filed in the Superior Court nor the instant petition, did

petitioner demonstrate that the California Court of Appeal erred in denying his claim challenging

the sufficiency of the evidence to support the gang enhancement.  Because petitioner has not

demonstrated that appellate counsel was ineffective in how he presented this claim on direct

appeal, the Superior Court did not err in denying this claim.

Petitioner next argues that appellate counsel was ineffective for failing to argue

that the jury instructions were confusing because the instruction that the prosecutor did not have

33

1  to prove motive reduced the burden of proof for the gang enhancement.  The trial court read

2  CALCRIM 3.70 which states,

> The People are not required to prove that a defendant had a motive to commit any
> of the crimes charged.  In reaching your verdict, you may, however, consider
> whether the defendant had a motive.

> Having a motive may be a factor tending to show that the defendant is guilty.  Not
> having a motive may be a factor tending to show the defendant is not guilty.

7  (CT at 212.)

8        The trial court also gave CALCRIM 1401 which states, in relevant part,

> If you find defendant Thae Lee guilty of the crime charged in Count One (PC 246,
> discharging a firearm at occupied motor vehicle), or the lesser crime of a violation
> of PC 246.3 (discharging of firearm in grossly negligent manner), you must then
> decide whether the People have proved the additional allegation that the defendant
> committed that crime for the benefit of, or at the direction of, or in association
> with a criminal street gang, and whether the defendant intended to assist, further,
> or promote criminal conduct by gang members.  You must decide whether the
> People have proved this allegation and return a separate finding "true" or "not
> true."

> To provide this allegation, the People must provide that:

> 1.  The defendant committed the crime for the benefit of, or at the direction of, or
> in association with a criminal street gang;

> AND

> 2.  The defendant intended to assist, further, or promote criminal conduct by gang
> members.

19  (CT at 217.)

20        In petitioner's case, the jury was also instructed with CALCRIM 1403, which

21  read, in relevant part,

> You may consider evidence of gang activity only for the limited purpose of
> deciding whether the defendant THAE LEE acted with the intent, purpose and
> knowledge that are required to prove the gang-related allegations charged (PC
> 186.22(b)(1)).

25  (CT at 221.)

26  ////

34

1    In an unpublished case, the California Court of Appeal rejected a claim alleging

2    that CALCRIM 370, read in a case involving a gang enhancement, violated due process:

3    Defendant Has Failed to Show Any Instructional Error.

4    Defendant contends his constitutional right to due process was violated, arguing,
     "[t]he trial court erroneously gave CALCRIM instruction number 370 (the

5    prosecution need not prove motive), without specifying that this instruction did
     not apply to the gang enhancements alleged pursuant to Penal Code section

6    186.22, subdivision (b)(1)" because "unlike the substantive offenses, motive is an
     element of the gang enhancement."

7
     The jury was instructed on motive with CALCRIM No. 370, as follows: "The

8    People are not required to prove that the defendant had a motive to commit any of
     the crimes charged. In reaching your verdict you may, however, consider whether

9    the defendant had a motive. [¶] Having a motive may be a factor tending to show
     that the defendant is guilty. Not having a motive may be a factor tending to show

10   the defendant is not guilty." (Italics added.)

11   The jury was also instructed with CALCRIM No. 1401 which provided in relevant
     part: " If you find the defendant guilty of the crimes charged in Counts 1 or 2, you

12   must then decide whether, for each crime, the People have proved the additional
     allegation that the defendant committed that crime for the benefit of, at the

13   direction of, or in association with a criminal street gang. You must decide
     whether the People have proved this allegation for each crime and return a

14   separate finding for each crime. [¶] To prove this allegation, the People must
     prove that: [¶] 1. The defendant ... committed the crime ... for the benefit of, at the

15   direction of, or in association with ... a criminal street gang; [¶] AND [¶] 2. The
     defendant intended to assist, further, or promote criminal conduct by gang

16   members." (Italics added.)

17   As CALCRIM No. 370 clearly applies to the substantive offenses, no reasonable
     juror would have applied that instruction to render a nullity the language in

18   CALCRIM No. 1401 requiring a finding that defendant committed counts 1 and 2
     for the benefit of, at the direction of, or in association with a criminal street gang

19   before finding the gang enhancement allegation pursuant to section 186.22,
     subdivision (b)(1) true. In People v. Fuentes (2009) 171 Cal.App.4th 1133, 1139,

20   the defendant similarly argued, inter alia, CALCRIM No. 370 conflicted with the
     instructions given on the section 186.22, subdivision (b) gang enhancement

21   because the enhancement instruction required a finding that he had an intent to
     further gang activity, but the motive instruction contained in CALCRIM No. 370

22   "contradicted this, telling the jury it did not have to make that finding."

23   The appellate court in People v. Fuentes, supra, 171 Cal.App.4th at pages
     1139-1140, rejected the defendant's argument, stating: "An intent to further

24   criminal gang activity is no more a 'motive' in legal terms than is any other
     specific intent. We do not call a premeditated murderer's intent to kill a 'motive,'

25   though his action is motivated by a desire to cause the victim's death. Combined,
     the instructions here told the jury the prosecution must prove that [the defendant]

26   intended to further gang activity but need not show what motivated his wish to do

1   so. This was not ambiguous and there is no reason to think the jury could not
    understand it. [The defendant] claims the intent to further criminal gang activity
2   should be deemed a motive, but he cites no authority for this position. There was
    no error." We agree with the analysis of <u>People v. Fuentes</u>, and similarly conclude
3   defendant has failed to demonstrate instructional error here.

4   <u>People v. Maurer</u> (1995) 32 Cal.App.4th 1121 is distinguishable. In that case, the
    appellate court found a standard motive instruction should not have been given in
5   conjunction with the instruction given on the charged offenses of misdemeanor
    child annoyance in violation of section 647.6. (<u>People v. Maurer</u>, <u>supra</u>, at pp.
6   1125-1127.) While the former instruction told the jurors that " '[m]otive is not an
    element of the crime charged and need not be shown,' " the latter instruction told
7   the jurors that in order to find the defendant guilty, they must find beyond a
    reasonable doubt " '[s]uch acts or conduct were motivated by an unnatural or
8   abnormal sexual interest in [the victim].' " (<u>Id.</u> at p. 1127, italics added.) The
    appellate court concluded the trial court erred by not excluding the section 647.6
9   offenses from the standard motive instruction, noting, "[w]e must bear in mind
    that the audience of these instructions is not a room of law professors deciphering
10  legal abstractions, but a room of lay jurors reading conflicting terms." (<u>Ibid.</u>) As
    discussed ante, the given instruction in this case posed no similar conflict.
11
12  The jury was also instructed with a modified version of CALCRIM No. 1403
    which stated in part: "You may consider evidence of gang activity only for the
13  limited purpose of deciding whether: [¶] ... The defendant acted with the intent,
    purpose, and knowledge that are required to prove the gang-related (crimes/and
14  enhancements) charged [¶] OR [¶] The defendant had a motive to commit the
    crime charged." Defendant contends this instruction created "confusion" for the
15  jury because it "was instructed that motive could be considered in determining
    whether the crimes were committed." But CALCRIM No. 1403 is not inconsistent
16  with CALCRIM No. 370 which, as discussed ante, instructed the jury that in
    reaching a verdict, it may "consider whether the defendant had a motive" even
17  though the prosecution was not required to prove defendant had a motive to
    commit any of the crimes charged.

18  We find no error.

19  <u>People v. Ceja</u>, 2010 WL 3374641 at *6 (Cal. App. 2010).

20       Because the California Court of Appeal rejected an identical claim challenging the

21  at-issue jury instructions as confusing, it is not likely that such a claim would have been

22  successful had petitioner's appellate counsel raised it on appeal.  Accordingly, the denial of this

23  claim of ineffective assistance of appellate counsel by the Superior Court was not an

24  unreasonable application of clearly established Supreme Court authority.

25       Petitioner next argues that appellate counsel did not sufficiently support the

26  claims on appeal.  The Superior Court rejected this claim on grounds that

1  petitioner failed to identify any facts or law that would have been persuasive on appeal.  The

2  undersigned finds that the denial of this claim by the Superior Court was not an unreasonable

3  application of clearly established Supreme Court authority.

4        Finally, petitioner alleges that appellate counsel should have argued on appeal that

5  trial counsel was ineffective.  The Superior Court rejected this claim on grounds that petitioner

6  had not demonstrated that trial counsel was ineffective.  The undersigned finds that the denial of

7  this claim by the Superior Court was not an unreasonable application of clearly established

8  Supreme Court authority.

9        F.  Claim Eight

10        Petitioner alleges that the gang enhancement statute, California Penal Code §

11  186.22, is unconstitutionally vague.  Petitioner raised this claim in habeas corpus petitions filed

12  in the California Court of Appeal and California Supreme Court which were summarily denied.

13  (Respondent's Lodged Documents 15-18.)  Accordingly, the undersigned independently reviews

14  the record to determine whether the denial of these claims was contrary to clearly established

15  Supreme Court authority.

16        In particular, petitioner argues that,

17        California's gang enhancement statute, Penal Code 186.22, is unconstitutionally
         complex, confusing, complicated, vague, and is being exploited as a device to
18        lighten prosecutors' burden of proof.  Petitioner's rights under the Fifth and
         Fourteenth Amendments of the United States Constitution were violated when he
19        was subjected to the unconstitutional statute.

20  (Dkt. No. 1 at 6.)

21        In Williams v. Evans, 2009 WL 1460832 (E.D. Cal. 2009), the Honorable

22  Lawrence O'Neill rejected a claim challenging California Penal Code § 186.22 as

23  unconstitutionally vague.  The undersigned adopts Judge O'Neill's reasoning herein:

24        The test for vagueness is whether the sentencing provision fails "to give a person
         of ordinary intelligence fair notice that it would apply to the conduct
25        contemplated."  United States v. Rearden, 349 F.3d 608, 614 (9th Cir. 2003); see
         also Coates v. City of Cincinnati, 402 U.S. 611, 614 (1971). When determining if
26        a statute is vague, a court should look at the common understanding of the

statute's terms.  Broadrick v. Oklahoma, 413 U.S. 601, 608 (1973); United States v. Fitzgerald, 882 F.2d 397, 398 (9th Cir. 1989).  In addition, a statute must establish minimal guidelines for law enforcement and not grant law enforcement undue discretion.  United States v. Sorenson, 914 F.2d 173, 174 (9th Cir. 1990); United States v. Van Hawkins, 899 F.2d 852, 854 (9th Cir. 1990). Finally, unless First Amendment freedoms are implicated, "a vagueness challenge may not rest on arguments that the law is vague in its hypothetical applications, but must show that the law is vague as applied to the facts of the case at hand."  United States v. Johnson, 130 F.3d 1352, 1354 (9th Cir. 1997) (citing Chapman v. United States, 500 U.S. 453, 467 (1991)).

Petitioner's claim that the STEP Act, specifically the gang enhancement statute, encourages arbitrary and discriminatory enforcement and is void for vagueness is without merit. As discussed in Claim Two, supra, the requirements for a gang enhancement are clear:

> First, the prosecutor must demonstrate that the defendant committed a felony "for the benefit of, at the direction of, or in association with [a] criminal street gang." Cal.Penal Code § 186.22(b)(1).  Second, the prosecutor must show that the defendant committed the crime "with the specific intent to promote, further, or assist in any criminal conduct by gang members."  Id.  We have previously recognized the importance of keeping these two requirements separate, and have emphasized that *the second step is not satisfied by evidence of mere membership in a criminal street gang alone*. See Garcia v. Carey, 395 F.3d 1099, 1102–03 & n. 5 (9th Cir. 2005).

Briceno, 555 F.3d at 1078 (emphasis added). A "criminal street gang" is defined as "any ongoing organization, association, or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more" enumerated criminal acts, "having a common name or common identifying sign or symbol, and whose members individually or collectively engage in or have engaged in a pattern of criminal gang activity." Cal.Penal Code § 186.22(f) (2002). FN11 A "pattern of criminal gang activity" is defined as "the commission of, attempted commission of, conspiracy to commit, or solicitation of, sustained juvenile petition for, or conviction of two or more" enumerated criminal offenses, "provided ... the last of those offenses occurred within three years after a prior offense, and the offenses were committed on separate occasions, or by two or more persons." Cal.Penal Code § 186.22(e) (2002).

> FN11. "Primary activities" is defined as "one of the group's 'chief' or 'principal' occupations.... That definition would necessarily exclude the occasional commission of those crimes by the group's members." Sengpadychith, 26 Cal.4th at 323.

In Briceno, the court stated "that these 'detailed requirements' were designed to ensure that the statute increased punishment only when a defendant 'committed a felony to aid or abet criminal conduct of a group that has as a primary function the commission of specified criminal acts and whose members have actually committed specified crimes, and who acted with the specific intent to do so.'" Id. at 1080 (quoting Gardeley, 14 Cal.4th at 623–24 & n. 10). The Briceno court

1    stated that the California Supreme Court in "Gardeley suggest[ed] that merely
     being a gang member, or committing a crime in association with another gang
2    member, is not enough to trigger the sentencing enhancements of § 186.22(b).
     Rather, the defendant must commit the crime with the specific intent to aid or abet
3    the criminal conduct of the gang." Id.

4    These requirements are not vague, nor do they encourage arbitrary or
     discriminatory enforcement. California Penal Code section 186.22 specifically
5    lists the conduct that makes a group a criminal street gang. The statute provides
     sufficient information to determine (1) if Petitioner was a member of a gang, (2) if
6    Petitioner's gang's primary activity was the commission of crimes, (3) if the
     gang's members engaged in a pattern of criminal activity, and (4) if Petitioner's
7    offenses were committed "for the benefit of, at the direction of, or in association
     with any criminal street gang, with the specific intent to promote, further, or assist
8    in any criminal conduct by gang members." Cal.Penal Code § 186.22(b), (e), (f).
     As discussed in Claim Two, supra, sufficient evidence supported the jury's
9    finding of the gang enhancement.

10   2009 WL 1460832 at *30-31.

11   The undersigned adopts Judge O'Neill's conclusion that California Penal Code §

12   186.22 is not unconstitutionally vague because it gives persons of ordinary intelligence fair

13   notice that it would apply to petitioner's at-issue conduct.  The statute was not vague as applied

14   to the facts of petitioner's case.

15   After independently reviewing the record, the undersigned finds that the denial of

16   this claim by the California Supreme Court was not an unreasonable application of clearly

17   established Supreme Court authority.  Accordingly, this claim should be denied.

18   Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for

19   a writ of habeas corpus be denied.

20   These findings and recommendations are submitted to the United States District

21   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

22   one days after being served with these findings and recommendations, any party may file written

23   objections with the court and serve a copy on all parties.  Such a document should be captioned

24   "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files

25   objections, he shall also address whether a certificate of appealability should issue and, if so, why

26   and as to which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if

1   the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. §

2   2253(c)(3).  Any response to the objections shall be filed and served within fourteen days after

3   service of the objections.  The parties are advised that failure to file objections within the

4   specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951

5   F.2d 1153 (9th Cir. 1991).

6   DATED:  October 25, 2012

7

8   _____

9   KENDALL J. NEWMAN
    UNITED STATES MAGISTRATE JUDGE

10  lee2855.157

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26